UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID PEREZ | ) | |
| | ) | |
| v. | ) | No. 23 C 14821 |
| | ) | |
| UNITED STATES OF AMERICA | ) | Judge Rebecca R. Pallmeyer |

### MEMORANDUM OPINION AND ORDER

Petitioner David Perez ("Perez") pleaded guilty to conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1962(d), and to possessing a firearm as a felon, 18 U.S.C. § 922(g)(1). The Seventh Circuit affirmed his conviction and 336-month sentence. *United States v. Perez,* 21 F.4th 490 (2021). Perez, who is currently serving that sentence, now petitions this court for a writ of habeas corpus under 28 U.S.C. § 2255. Perez argues that counsel at the plea-bargaining stage, at sentencing, and on appeal, provided ineffective assistance. For the reasons given below, the petition is denied.

### DISCUSSION

**I. Background**

On July 21, 2016, Perez was charged by indictment with violations of RICO, 18 U.S.C. § 1962(d), ane with possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1), arising from his involvement in the Almighty Latin Kings Nation (the "Latin Kings"). (Crim. R., Indict. [4].) The Latin Kings, a prominent street gang, engaged in violence, extortion, and threats to protect their territory, and utilized standing orders to shoot or beat rival gang members and Latin Kings members who strayed from the organization. (*Id.* ¶ 5, 9.h.) From 2004 to 2016, with the exception of one four-year period from 2018 to 2012, Perez was a member of the Maywood, Illinois chapter of the Latin Kings organization. (Crim. R., Plea Decl. [259] ¶ 5.) The Maywood Latin Kings consisted of two circles, one more senior (the "Junior" circle) and one more junior (the "Shorty"

circle). (Crim. R., Indict. [4] ¶ 4.f.) Perez was the leader, also known as the "Inca," of the Shorty circle. (*Id.* ¶ 6.f.)

The indictment against Perez included a notice of special findings relating to the RICO charge, which detailed Perez's participation in an attempted murder. (*Id.* ¶ 10.) In May of 2016, at the instruction of the Junior circle, Perez issued a standing order to the Shorty circle, directing them to kill a former member of the Latin Kings (the "victim") who had fought with the gang. On May 11, 2016, when Perez spotted the former member at a restaurant, he notified gang members of the location so that they could carry out his order. (*Id.* ¶ 10; Gov. Br. [371] at 3.) Gang members proceeded to the restaurant and shot the victim several times in the stomach, causing permanent colon damage. (*Id.*)

On March 24, 2017, Perez, who was represented by Attorney Joshua Herman, entered a "blind" plea of guilty to the RICO and felon-in-possession charges. In his sworn plea declaration, Perez stated his position that the maximum statutory penalty for the RICO charge is twenty years, but he also acknowledged "that the government may take the position that the maximum statutory penalty is life imprisonment." (Crim. R., Plea Decl. [259] ¶ 6.)[1] While a preliminary calculation of the guidelines set forth in the declaration resulted in an offense level of 28 for the RICO charge, the declaration also acknowledged that Perez "underst[ood] that the government may take a different position, including that the offense level is higher for Count One." (*Id.* ¶¶ 8–9.)

At the plea hearing, the court reviewed the terms of the declaration with Perez, ensuring that he was aware of the disagreement between the parties over the potential maximum sentence on the RICO charge. (Crim R., Plea Hearing Tr. [370] at 14:23-15:13.) The exchange went as follows:

> THE GOVERNMENT: The government has charged the defendant in the enhanced statutory penalties portion of Count 1. It's the government's position that based on the allegations contained within this section, the defendant is subject to a statutory maximum penalty of life in prison on Count 1. We believe after talking

---

[1] Citations to the criminal record, *USA v. Perez*, 16-cr-462-6, are denoted by "Crim. R."

> with defense counsel that this is going to be a legal issue that we are going to address with the Court, but *I just want the defendant to be on notice that this is -- that life imprisonment is the government's position.*
>
> THE COURT: *You understand that?*
>
> THE DEFENDANT: *Yes.*
>
> THE COURT: And I see it's in the plea declaration, that it's your position the maximum is 20 years in prison on Count 1. *The government's position is it may be that the maximum is actually life. You understand that?*
>
> THE DEFENDANT: *Yes.*

(*Id.* at 15:4-20 (emphasis added).) The court also asked Perez, "Has anybody made you any promises about what your sentence is going to be?" Defendant responded, "No." (*Id.* at 20:21–23.) The court continued, recognizing that Defendant's calculations resulted in a guideline range of 78 to 97 months, but warned him that this was not guaranteed:

> THE COURT: All right. Now, remember, that isn't what the government necessarily thinks. They may look at this differently and come up with an entirely different number. I myself may come up with yet another calculation of what the guideline ought to be. And you will -- and there's also the matter of the other counts. *So right now, we're really not in a position to say what your sentence is going to be. You understand that?*
>
> THE DEFENDANT: *Yes.*
>
> THE COURT: All right. And if a sentence turns out to be something worse than what you're hoping for right now, you're not going to be able for that reason to withdraw your guilty plea on Counts 1 and Count 16. You understand that?
>
> THE DEFENDANT: Yes.

(*Id.* at 22:2–15 (emphasis added).) The court continued to confirm the Defendant's understanding of facts supporting the plea, asking, for example, "And why was it a violation of law for you to possess a firearm?" to which Defendant responded, "I was a felon with a jail term of a year." (*Id.* at 24:8–11.) The court once again confirmed: "So you had a prior felony conviction?" To which Defendant responded, "Yes." (*Id.* at 24:12–14.) Perez then pleaded guilty to Count One and Sixteen, the RICO and firearms charges respectively.

3

As predicted, the parties disagreed on the appropriate penalty. Generally, under RICO, a statutory maximum sentence of twenty years applies to violations of 18 U.S.C. § 1963(a); but in situations where the RICO charge is based on predicate acts of racketeering activity that themselves are punishable by life imprisonment, the RICO defendant may also be sentenced to life in prison via conspiracy liability. *See United States v. Brown*, 973 F.3d 667, 709 (7th Cir. 2020) (affirming sentences and holding defendants eligible for life because "section 1963 requires that the 'violation'—in this case, the conspiracy—be 'based on a racketeering activity for which the maximum penalty includes life imprisonment,'" and "defendants' conspiracies were all *based on* murders for which the maximum penalty includes life imprisonment" (emphasis in original)).

Under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), to increase a sentence beyond the statutory maximum, the Government must both (1) allege facts in the indictment to support the predicate racketeering activity that qualifies for the enhancement *and* (2) prove them beyond a reasonable doubt. One of Perez's alleged racketeering activities included the attempted murder of the victim. The Government argued that because his co-conspirators discharged the firearm in the course of attempted murder and caused great bodily harm and permanent disfigurement to the victim, which is punishable under Illinois law by life imprisonment, 730 Ill. Comp. Stat. 5/5-8-1(a)(1)(d)(iii), Perez himself was subject to life imprisonment under RICO's sentencing enhancement. (Crim. R., Gov. Br. [371] at 5–7.)

At that point, it was undisputed that the second *Apprendi* requirement had not been met; Perez had not admitted to the specific facts warranting life imprisonment, nor had the government proven them beyond a reasonable doubt. The focus, at this point, was whether the alleged predicate offense in fact supported the RICO sentencing enhancement. Perez argued that RICO's sentencing enhancement could not apply, even if proven, because Perez himself had not discharged the weapon in the attempted murder. Illinois law does not impose life in prison for attempted murder for an individual who did not personally discharge the weapon. (*See* Crim. R., Def.'s Br. [391].) The parties briefed the issue, and the court heard argument in open court, where

4

it made clear to Perez that there were two issues before it: whether the sentencing enhancement applied and what sentence would ultimately be imposed. The court explained that a determination in favor of the government on whether the sentencing enhancement applies would not necessarily mean that a life sentence would be imposed; rather, the "only question is what the lawyers can argue for at the time of sentencing." (Crim. R., January 1, 2018 Hearing Tr. [640] at 19:24–20:6.)

On the issue of whether the sentencing enhancement applies at all, the court came down in favor of the government. In a 14-page opinion issued on February 14, 2018, the court concluded that, assuming the government could prove the special findings in the indictment beyond a reasonable doubt, Perez was eligible for the enhancement, because the issue "is not whether the predicate racketeering activity [that is the underlying Illinois attempted murder charge] has a maximum penalty of life imprisonment *with respect to Perez*." (Crim. R., Amended Order [464] at 14 (emphasis in original).) The critical point is that the predicate act of attempted murder, as alleged, would "indisputably warrant a life sentence for one or more of Perez's co-conspirators," which is sufficient for a life sentence for Perez under RICO and *United States v. Pinkerton*, 328 U.S. 640, 647–648 (1946). (*Id.*)

Three months after the court issued this ruling, Perez's attorney reported that after reviewing the issue of the enhancement with Perez and the prosecutor, the parties expected they would be able to resolve the second *Apprendi* requirement (that is, whether the attempt murder could be proven beyond a reasonable doubt) without trial. (Crim. R., May 29, 2018 Hearing Tr. [642] at 2:13–3:3.) At a subsequent hearing, the Government confirmed its view that, should the special findings be proven true beyond a reasonable doubt, the enhancement applied, and Perez would be eligible for a life sentence. Perez's attorney reported that he had discussed with Perez his right to have a jury decide these facts in support of the underlying charge. On July 18, 2018, Perez affirmatively waived his right to have a jury decide whether the Government had proven the facts qualifying him for a life sentence. (*See* Crim. R., Order [516].) He testified in court that each fact detailed in the special findings section of the indictment was true and proven beyond

5

reasonable doubt, specifically, that he ordered a murder; that he alerted his subordinates to the victim's presence at a restaurant; and that his subordinates then found and shot the victim at the restaurant. He preserved his ability to appeal the court's conclusions of law as to whether the sentencing enhancement applied to those undisputed facts. (*See generally* Crim. R., Hearing Tr. [643].)

In the presentence report, the Probation Office calculated the total Offense Level at 41. With a Criminal History category III, Perez faced a guideline range of 360 months to life. Through counsel, Perez submitted written objections to the PSR and preserved his objection to the court's conclusion that the sentencing enhancement applied. (*See* Crim. R., Def.'s Objections to PSR [601].) Perez's attorney also submitted a sentencing memorandum requesting a below-guideline sentence, detailing factors relevant under 18 U.S.C. § 3553(a), and highlighting the sentences his co-defendants received and possible disparities that could result. (*See generally* Crim. R., Def.'s Sentencing Mem. [602].) Perez's attorney also introduced a psychologist's opinion on how Perez's experiences in the gang, his childhood, and his life generally have affected his behaviors and mental health, and filed letters from Perez's friends and family in support.

At the hearing, Perez's attorney acknowledged that his only meaningful objection was the one the court had resolved against him—the objection to application of the sentencing enhancement. Regardless of their merits, the remaining objections would not alter the guideline calculations for Perez. Counsel therefore withdrew those objections (Crim. R., Sentencing Hearing Tr. [657] at 3:10–4:25), focusing instead on the § 3553(a) factors and argued for a 240-month sentence, 120 months lower than the low end of the guideline range. (*Id.* at 5:1–15, 72:19–22.) The government requested a guideline sentence. As described in the PSR, in his role as a member of the Latin Kings, Perez had participated in various acts of violence, including conspiracy to commit murder, two attempted murders, two aggravated assaults, arson, extortion and the possession and sales of firearms. In his role as a leader in the gang, he planned and ordered others to commit violent acts. The court considered these circumstances as well as §

6

3553(a) factors—noting the need to deter the scourge of street gang violence, but acknowledging Perez's evident remorse and the fact that some of his conduct was motivated by Perez's own fear of other gang members. (*Id.* at 68:7–73:7.) The court imposed a below-guideline sentence of 336 months for the RICO conviction, and 120 months, to be served concurrently, for the felon-in-possession conviction. After the court asked if there were any other issues to be addressed, the defense raised the location of incarceration and nothing else; the argument about sentencing disparities was left unmentioned.

On appeal, represented by substitute counsel, Perez challenged his sentence on two grounds: (1) that the maximum penalty for the RICO count was improperly enhanced to life in prison, and (2) that the district court judge failed to consider his argument about the need to avoid unwarranted sentencing disparities with similarly situated defendants under § 3553(a)(6). The Seventh Circuit affirmed, holding that the district court correctly determined that "the RICO violation was 'based on' an act of racketeering that is punishable by life imprisonment under state law—discharging a firearm in an attempted murder—a predicate act that raised the applicable maximum penalty from 20 years to life under § 1963(a)." *United States v. Perez*, 21 F.4th 490, 491 (7th Cir. 2021). Further, the Seventh Circuit held that the "argument about unwarranted sentencing disparities is both waived and meritless." *Id.* The argument was waived because after stating the reasoning for the sentence, the district court asked whether anything needed to be addressed, and counsel failed to mention any § 3553(a)(6) concerns. *Id.* The argument was also meritless because "a sentence within or below a properly calculated Guidelines range necessarily complies with § 3553(a)(6)." *Id.* (citing *United States v. Sanchez*, 989 F.3d 523, 541 (7th Cir. 2021) (Because the guidelines inherently account for sentencing disparities, "an argument that a district court did not adequately consider unwarranted sentencing disparities when giving a within-guidelines sentence may 'therefore be passed over in silence.'")).

Perez then filed the instant habeas petition under 28 U.S.C. § 2255. (Pet.'s Mot. [1].)

**DISCUSSION**

**I.     Legal Standard**

Under 28 U.S.C. § 2255, a court may grant relief from a federal conviction or sentence if "the sentence was imposed in violation of the Constitution or laws of the United States," "the sentence was in excess of the maximum authorized by law," or the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "This 'extraordinary remedy' is available only in limited situations." *Neal v. United States*, 155 F.4th 678, 685 (7th Cir. 2025) (citing *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007)). Absent a showing of both cause for the default and prejudice, a petitioner cannot use § 2255 to raise a claim that could have been raised at trial or on direct appeal. *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). There is an exception, however, for an ineffective-assistance-of counsel claim; such a claim may be the basis for a § 2255 petition, whether or not the petitioner could have raised the claim on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

**II.    Analysis**

Perez argues that his conviction and sentence should be vacated because he received ineffective assistance of counsel in the plea process, at sentencing, and on appeal.[2] Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), to succeed on his ineffective assistance of claim, Perez "must demonstrate that his counsel's assistance was objectively unreasonable and resulted in a substantial risk of prejudice." *Hutchings v. United States*, 618 F.3d 693, 696 (7th Cir. 2010) (citation omitted). The court's review of an attorney's performance is "highly deferential," and "presume[s] that the attorney advised his client effectively." *Id.* at 696–97 (citation omitted). For the reasons stated below, the court finds that Perez has failed to establish prejudice at any stage in his proceedings.

---

[2]     Perez also argued that his conviction must be vacated under *Rehaif v. United States*, 588 U.S. 225 (2019), but he abandoned that claim in his reply. (Reply [17] at ¶ 6.)

Perez also requests an evidentiary hearing, but the court will not conduct such a hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "Rather, a hearing is warranted when a petitioner alleges facts, which if proven, would entitle him to relief." *Mayberry v. Dittmann*, 904 F.3d 525, 532 (7th Cir. 2018). The Government argues that no evidentiary hearing is required here, and the court agrees. Perez alleges few specific facts that would entitle him to relief, and some are flatly contradicted by the record. But even taking Perez's allegations as true, he is not entitled to relief. Having reviewed the record, for the reasons explained below, Perez's petition is denied.

### A. Assistance of Counsel at the Plea Stage

Perez first alleges that before he entered his guilty plea, counsel provided inaccurate advice about the guidelines. Specifically, he contends that his attorney told him that "240 months was the most he would get using the open plea" and did not warn him that he could receive a sentence enhancement for the attempted murder by his co-conspirators, nor that he was eligible for the twenty-eight-year sentence he did receive. (Mem. in Support of Pet. [4] at 5.) Had he known all of these things, he claims he would have opted for a trial.

Perez's petition fails on the second element of *Strickland*. There was no prejudice here. "To establish prejudice in the pleading context, the petitioner must prove that there is a reasonable probability that he would not have pled guilty absent his attorney's deficient conduct." *Hutchings*, 618 F.3d at 697 (citations omitted). It is not enough that Perez states that he otherwise would have gone to trial; "he must also come forward with objective evidence that he would not have pled guilty." *Id.* (finding statement that petitioner would have gone to trial but for incorrect representation by attorney unpersuasive in light of repeated assertions that he was guilty and history of the plea). This evidence can include "the nature of the misinformation provided by the attorney to the petitioner and the history of plea negotiations." *Id.*

If it were true that at some point Attorney Herman told Perez that his sentence would be capped at 240 months, Perez would have to make a showing that he would otherwise have

9

proceeded to trial. All he has offered on this score is his own statement, which is not enough under *Hutchings*. (Mem. in Support of Pet. [4] at 7.) But the notion that counsel provided him with misinformation about the sentence finds no support in this record. To the contrary, the record shows that prior to Perez's guilty plea, his attorney recognized that the prosecution could seek a life sentence for Perez. The plea declaration itself addresses this very possibility. During his plea colloquy, Perez stated under oath that he had not been promised anything about his sentence; that he understood that the government was seeking an enhanced statutory maximum of life in prison; that he understood his sentence could be more severe than what he expected or hoped for; and that he nevertheless desired to enter a plea of guilty. The court later definitively ruled that should the government prove the special findings beyond a reasonable doubt, Perez would be eligible for a life sentence. Then, having already pleaded guilty to the RICO charge, with an understanding of the court's determination on the sentencing enhancement, Perez proceeded to admit in open court to facts that supported the possible life sentence, explicitly waiving his right to trial on these specific facts. *Cf. Bethel v. United States*, 458 F.3d 711, 719 (7th Cir. 2006) (affirming district court's rejection of an ineffective assistance claim; counsel's alleged mistaken sentencing prediction "might give us pause if [defendant] had not repeatedly insisted at his plea hearing that he was not relying on a particular sentence in entering his plea").

    Perez presents no other objective evidence tainting the plea negotiation process or confirming that he would have gone to trial but for his attorney's alleged representation. He therefore cannot establish prejudice. The cases Perez cites are readily distinguishable on this basis. In *Missouri v. Frye*, 566 U.S. 134 (2012), the Court held that the constitutional right to counsel extends to negotiations of plea bargains, and the defendant was prejudiced when his attorney failed to communicate a more favorable plea offer than the one he ultimately accepted. The petitioner in *Lafler v. Cooper*, 566 U.S. 156 (2012) established prejudice by presenting evidence that his attorney dissuaded him from accepting a plea offer that would have resulted in a far shorter sentence than the one he received after being found guilty at trial. Perez offers no

evidence that his attorney failed to communicate or recommend any plea agreement, favorable or otherwise, or that he was otherwise prejudiced in the plea negotiation process in this case.

Nor has Perez shown that his attorney could have made a more effective objection to the sentencing enhancement. He contends that Attorney Herman should have argued that the state law subjecting his co-conspirators to life in prison for attempted murder, 730 Ill. Comp. Stat. 5/5-8-1(a)(1)(d)(iii), does not qualify as a predicate act for a life sentence under RICO under "the categorical approach" outlined in *Mathis v. United States*, 579 U.S. 500 (2016).[3] But any such argument would have had no merit.[4] First, the categorical approach requires the court "to discern a 'generic' definition" of a predicate offense and compare the elements of the underlying conviction to that generic definition. *United States v. Brown*, 973 F.3d 667, 709 (7th Cir. 2020); *Mathis*, 579 U.S. 500 (applying categorical approach to determine whether a past conviction for burglary under Iowa law qualified as a conviction for "burglary" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)); *United States v. Taylor*, 596 U.S. 845 (2022) (applying categorical approach in deciding whether a Hobbs Act robbery qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A)).

The maximum penalty in RICO prosecutions, on the other hand, "depends on the maximum penalty for the most serious predicate offense." *United States v. Warneke*, 310 F.3d 542, 549 (7th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Jan. 10, 2003). The law is clear that the categorical approach described in *Mathis* and *Taylor* does not apply in RICO

---

[3] Perez argues in his reply that the Government has waived this point by not addressing it in their brief. The court nevertheless finds it to be unavailing for the reasons stated here.

[4] Perez argues in his reply that the Fourth Circuit did apply the categorical approach to this issue in *United States v. Simmons*, 11 F.4th 239 (4th Cir. 2021). But Perez misunderstands *Simmons*. In *Simmons*, the defendants faced charges of knowingly possessing, brandishing, or discharging a firearm during two crimes of violence. The Fourth Circuit applied the categorical approach to determine whether a conviction for an "aggravated" RICO conspiracy (*i.e.* one with a sentencing enhancement) could itself serve as a predicate "violent crime" under the statute, *not* whether a particular crime could serve as a predicate for the RICO enhancement.

prosecutions. *Brown*, 973 F.3d at 709 (holding categorical approach inapplicable to RICO enhancements) ("[The categorical approach] is not consistent with the text of the statute. Section 1963 contemplates a statutory enhancement when qualifying circumstances exist.") Perez's attorney could not have been expected to bring an argument that had no chance of success. And, as the record amply shows, Attorney Herman did in fact zealously dispute that the attempted murder underlying the RICO charge could serve as a basis for a life sentence for Perez.

Finally, Perez argues that his attorney should have presented grand jury witness testimony to the government—testimony that allegedly undermined the finding that he ordered his subordinates to shoot the victim—to gain "leverage to barter for a binding plea," rather than advising him to plead guilty without a plea agreement. (Mem. in Support of Pet. [4] at 9.) Specifically, Perez states that an unnamed witness testified that Perez "did not order him to commit an attempted murder." (*Id.* at 8.) Instead, the witness testified that it was the victim who first shot at Perez's subordinates, which caused them to return fire despite Perez's having authorized them to use only "a warning and/or hand-to-hand assault." (*Id.*) It is unclear whether the witness was one of Perez's subordinates, whether he was at the scene of the shooting, or what concerns might be raised about this witness's credibility. Most important, Perez has not explained why he nevertheless admitted to having ordered the victim's murder and alerting his conspirators to the victim's presence in the restaurant.[5] Perez also states he was "not advised ahead of the plea declaration that there would be the resulting legal argument that could result in

---

[5] A finding that counsel in fact failed to leverage such testimony in the plea-bargaining process would not change the outcome here. Perez does not argue that but for this ineffective assistance, he would have decided to present this evidence at trial. He instead suggests that his attorney could have negotiated a favorable plea deal, but in this case it is not apparent that the government made any plea offer at all. Nor is it clear that this alleged failure would support habeas relief. The Seventh Circuit "has yet to accept as valid a prejudice theory positing that absent plea counsel's ineffectiveness, the defendant would have negotiated a different, more favorable plea agreement." *Anderson v. United States*, 94 F.4th 564, 573, n.7 (7th Cir. 2024); *Bethel*, 458 F.3d at 720 ("Whether he could have negotiated a better plea deal is irrelevant to the issue of prejudice in the ineffective assistance context."); *cf. Lafler v. Cooper*, 566 U.S. 156 (2012) ("It is, of course, true that defendants have 'no right to be offered a plea.'")

a statutory maximum of life imprisonment instead of twenty years," but again, the record defeats any contention that Perez was unaware of this possibility. (Mem. in Support of Pet. [4] at 9.)

### B. Assistance of Counsel at Sentencing

Perez argues that at the sentencing stage, his counsel failed to object to the enhancement for attempted murder, failed to raise the disparity in sentencing between him and his co-conspirators, and failed to object to his sentence as cruel and unusual in violation of the Eighth Amendment. These arguments, too, fail on the basis that Perez has not established prejudice. To do so in the sentencing context, Perez would have to show that "but for counsel's deficient performance, a reasonable probability exists that he would have received a different sentence." *Mertz v. Williams*, 771 F.3d 1035, 1043 (7th Cir. 2014). "Courts assess that probability by evaluating the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweighing it against the evidence in aggravation." *Id.* The probability of a different sentence "must be substantial, not just conceivable." *Id.* at 1044 (citation omitted).

Perez cannot show that his attorney failed to press the issue of sentencing disparities in his sentencing hearing; Mr. Herman did in fact make such an argument. (Crim. R., Sentencing Hearing Tr. [657] at 62:2–63:17). Moreover, as the Seventh Circuit has explained, the Guidelines inherently capture the concern for sentencing disparities between similarly situated defendants. This court acknowledged that the Guideline calculations yielded an appropriate sentencing range in this case; it nevertheless imposed a below-Guidelines sentence in light of mitigating factors presented by Attorney Herman, including Perez's own expression of remorse and other motivations for the crime. In affirming his sentence, the Court of Appeals recognized this: "Because the judge 'correctly calculated and carefully reviewed the Guidelines range, [she] necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.'" *Perez*, 21 F.4th at 494 (alteration in original). Any further argument regarding sentences imposed on Perez's co-defendants would not have generated a more lenient result.

As for Perez's assertion that his attorney should have argued that his sentence was cruel and unusual punishment in violation of the Eighth Amendment, this argument fails under both prongs of the *Strickland* test. Perez argues that a twenty-eight-year sentence for a twenty-nine-year-old is grossly disproportionate to the crime committed. But Attorney Herman made forceful arguments against a harsh sentence in this case, and Perez fails to show how counsel could have made a meritorious argument that the court abused its discretion in imposing a legally-authorized, below-guideline sentence.[6] "In non-capital felony convictions, a particular sentence that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing court abused its discretion." *United States v. Olson*, 450 F.3d 655, 686 (7th Cir. 2006). Consequently, there is no basis for a finding that the court would have imposed a different sentence, had his lawyer made this argument. *See Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000) (affirming eighty-year sentence for cocaine trafficking where "there was no basis upon which to conclude that the sentencing court abused its discretion" and sentence was allowed by law).

Not only would this argument have failed to change Perez's sentence, but his attorney could not have been expected to pursue it. "Criminal defense lawyers, like other lawyers, do not have an ethical duty to make groundless arguments; indeed, they have an ethical duty not to make such arguments." *United States v. Evans*, 92 F.3d 540, 544 (7th Cir. 1996). Perez was facing the possibility of life in prison. He in fact received a below-guideline sentence after his attorney raised numerous arguments and introduced mitigating evidence in his favor. "[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Neal v. United States*, 155 F.4th 678, 691 (7th Cir. 2025) (citation omitted) (affirming finding that petitioner did not receive ineffective assistance at sentencing

---

[6] To the extent Perez claims the court abused its discretion in not considering similarly situated offenders, or the history of the offender (*see* Mem. in Support of Pet. [4] at 26), this argument lacks merit for the reasons stated before. The Seventh Circuit has already held that the court did consider these factors in sentencing him.

where attorney considered options and client's preferences in discretionary sentencing regime, and counsel's performance was "within the range of reasonable professional assistance"). Perez's claims of ineffective assistance of trial counsel are dismissed.

### C. Assistance of Counsel on Appeal

Perez claims his assistance of counsel on appeal was ineffective because they too failed to raise the "categorical" approach under *Mathis*. This claim fails for the same reasons as stated before. Because this was not a viable legal argument, his counsel could not have been expected to raise it. His attorney did challenge his sentence on appeal, arguing against that the sentencing enhancement should not apply, but the Seventh Circuit disagreed.

### CONCLUSION

For the reasons stated, the court finds that Perez has failed to allege facts that, if taken as true, show the ineffective assistance of counsel. Consequently, the petition for writ of habeas corpus is denied. The court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2) (the court shall issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right").

ENTER:

Dated: December 1, 2025

_____
REBECCA R. PALLMEYER
United States District Judge